CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KENNETH J. KAO (CABN 194912)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7320
Facsimile: (415) 436-6748
kenneth.kao@usdoj.gov

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARC SEAWRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>ANDREA R. LUCAS, CHAIR, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br><br>Defendant. | Case No. 3:26-cv-03444-TSH<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 8, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom E, 15th Floor<br>The Honorable Thomas S. Hixson |

## TABLE OF CONTENTS


I. INTRODUCTION .......... 2

II. BACKGROUND .......... 3

A. Factual Background .......... 3

B. Plaintiff's Administrative Proceedings & Civil Action .......... 6

III. LEGAL STANDARDS .......... 7

A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction .......... 7

B. Rule 12(b)(6) – Failure to State a Claim .......... 7

IV. ARGUMENT .......... 8

A. Plaintiff's Generalized Grievances Relating to the Executive Order, and the Agency's Implementation thereof, Does Not Present a Case or Controversy to Confer Standing Under Title VII .......... 8

1. Plaintiff's Allegations Are Unactionable Generalized Grievances that Deprive the Court of Jurisdiction. .......... 8

2. The Appropriate Alternative Remedy is the Striking of These Generalized Grievance Allegations from the Complaint (Fed. R. Civ. P. 12(f)) .......... 11

B. Count I Fails to State a Claim for Hostile Work Environment .......... 12

1. Plaintiff Does Not Plausibly Allege Any Actionable Harassment .......... 12

2. Plaintiff Does Not Allege Conduct That Is Sufficiently Severe or Pervasive to Alter the Conditions of Plaintiff's Employment. .......... 14

3. Plaintiff Does Not Allege Facts Showing That the At-Issue Acts Were Based On Plaintiff's Protected Characteristic or Prior Protected Activity .......... 15

C. Count II Fails to State a Claim for Discrimination .......... 17

1. The Complaint Does Not Allege Direct or Circumstantial Evidence to Support a Plausible Inference of Discrimination .......... 18

D. Count III Fails to State a Claim for Retaliation .......... 20

E. Because Plaintiff Has Not Pleaded an Underlying Discriminatory or Hostile Work Environment, Plaintiff's Constructive Discharge Allegations Fail as a Matter of Law .......... 21

V. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Ahmed v. Wormuth,*
2023 WL 2309776 (N.D. Cal. Feb. 28, 2023) ........ 20

*Ahmed v. Wormuth,*
2023 WL 4205765 (N.D. Cal. June 26, 2023) ........ 17

*Ardalan v. McHugh,*
2014 WL 3846062 (N.D. Cal. Aug. 4, 2014) ........ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 7, 8, 17-18

*Austin v. City of Oakland,*
2018 WL 2427679 (N.D. Cal. May 30, 2018) ........ 19

*Austin v. Univ. of Oregon*,
925 F.3d 1133 (9th Cir. 2019) ........ 18, 20

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ........ 7

*Behringer v. Cal. Polytechnic State Univ. San Luis Obispo*,
No. 23-4162, 2025 WL 2028297 (9th Cir. July 21, 2025) ........ 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 7

*Bleeker v. Johanns,*
2009 WL 4730931 (D. Ariz. Dec. 2, 2009) ........ 12, 13

*Bleeker v. Vilsack*,
468 F. App'x 731 (9th Cir. 2012) ........ 12

*Brooks v. City of San Mateo*,
229 F.3d 917 (9th Cir. 2000) ........ 22

*Burlington Northern & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) ........ 21

*Ching Fang Chang v. Dep't of Homeland Sec., No. 20-cv-07011-LHK*,
2021 WL 2986516 (N.D. Cal. July 15, 2021) ........ 15, 16

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 7, 11

*Cooper v. Dignity Health*,
438 F. Supp. 3d 1002 (D. Ariz. 2020) ........ 13

*Cross v. U.S. Equal Emp. Opportunity Comm'n*,
810 F. Supp. 3d 88 (D. D.C. 2025) ............ 10

*Dixon v. Hawaii, Dep't of Educ.*,
2017 WL 6029589 (D. Haw. Dec. 5, 2017) ............ 13

*Fowler v. Potter, No.*
2008 WL 2383073 (N.D. Cal. June 9, 2008) ............ 12

*FreeState Justice v. Equal Employment Opportunity Commission, et al.*,
2026 WL 1703707 (D. Md. June 12, 2026) ............ 10

*Green v. Brennan*,
578 U.S. 547 (2016) ............ 21

*Heyer v. Governing Bd. of the Mt. Diablo Unified Sch. Dist.*,
521 F. App'x 599 (9th Cir. 2013) ............ 19

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) ............ 17

*Keller-McIntyre v. San Francisco State Univ.,*
2007 WL 776126 (N.D. Cal. Mar. 12 2007) ............ 13

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ............ 4

*Knox v. Donahoe,*
2012 WL 949030 (N.D. Cal. Mar. 20, 2012) ............ 19

*Lacayo v. Donahoe, No. 3:*
14-cv-04077-JSC, 2015 WL 993448 (N.D. Cal. Mar. 4, 2015) ............ 4

*Lelaind v. City and Cty. of San Francisco*,
576 F. Supp. 2d 1079 (N.D. Cal. 2008) ............ 20

*Leong v. Potter*,
347 F.3d 1117 (9th Cir. 2003) ............ 17

*Luat v. Mabus,*
2013 WL 12091018 (S.D. Cal. July 31, 2013) ............ 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............ 7, 17

*Manatt v. Bank of Am., NA*,
339 F.3d 792–99 (9th Cir. 2003) ............ 14, 15, 20

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ............ 17

*Mendenhall v. City & County of San Francisco,*
2011 WL 6779300 (N.D. Cal. Dec. 27, 2011) ............ 17

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ........ 7

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998) ........ 16

*Pennsylvania State Police v. Suders*,
542 U.S. 129–47 (2004) ........ 21, 22

*Pesci v. McDonald,*
2015 WL 12672094 (C.D. Cal. Oct. 22, 2015) ........ 13

*Porter v. California Dep't of Corr.*,
419 F.3d 885 (9th Cir. 2005) ........ 20

*Ray v. Henderson*,
217 F.3d 1234–43 (9th Cir. 2000) ........ 21

*Ryan v. Santa Clara Valley Transp. Auth.,*
2017 WL 1175596 (N.D. Cal. Mar. 30, 2017) ........ 20, 21

*Sablan v. A.B. Won Pat Int'l Airport Auth.,*
2010 WL 5148202 (D. Guam Dec. 9, 2010) ........ 17

*Silveria v. McDonough,*
2022 WL 187839 (9th Cir. Jan. 20, 2022) ........ 12

*Spokeo, Inc. v. Robins*,
578 U.S. 330–40 (2016) ........ 7

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ........ 8, 20

*Van Petten v. McDonough,*
2022 U.S. Dist. LEXIS 129171 (C.D. Cal. July 20, 2022) ........ 19

*Vasquez v. County of Los Angeles*,
349 F.3d 634–44 (9th Cir. 2003) ........ 14, 19

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 7, 9

*Willis v. Donahoe,*
2013 WL 6199176 (N.D. Cal. Nov. 26, 2013) ........ 18, 20

**FEDERAL STATUES**

42 U.S.C. § 2000e-2(a)(1) ........ 15

42 U.S.C. § 2000e-16(a) ........ 15

217 F.3d at 1109-10 ........ 12, 14

510 U.S. ........ 12, 13, 15

536 U.S. ........ 12

**FEDERAL**

Fed. R. Civ. P. 12(b)(1) ........ 2, 7, 11
Fed. R. Civ. P. 12(b)(6) ........ 2, 7

**FEDERAL RULES**

Rule 12(b)(1) ........ 1, 7, 11
Rule 12(b)(6) ........ 1, 7, 11
Rule 12(f) ........ 1, 11
Rules 12(b)(1) ........ 2

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on Thursday, October 8, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Thomas S. Hixon sitting at Courtroom E, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA, Defendant Andrea R. Lucas, Chair, U.S. Equal Employment Opportunity Commission, will and hereby does move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6), and further, to strike pursuant to Rule 12(f). Fed. R. Civ. P. This motion is based on this Notice; the Memorandum of Points and Authorities; the pleadings, records, and files in this case; other matters of which the Court takes judicial notice; and such other written or oral argument as may be presented at or before the time the Court takes this motion under submission.

## ISSUES TO BE DECIDED

1. Whether Plaintiff's generalized grievances and disagreement with the Executive Order 14168, and the Agency's implementation thereof, confers standing on Plaintiff under Title VII absent some injury in fact;

2. Whether Plaintiff fails to state a claim upon which relief can be granted with respect to Plaintiff's hostile work environment claim;

3. Whether Plaintiff fails to state a claim upon which relief can be granted with respect to Plaintiff's discrimination claim; and

4. Whether Plaintiff fails to state a claim upon which relief can be granted with respect to Plaintiff's retaliation claim.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

Plaintiff Marc Seawright's Complaint is, at its core, a challenge to the wisdom and legality of Agency-wide policy decisions made in response to Executive Order 14168 – decisions on implementation that applied equally to every employee of the U.S. Equal Employment Opportunity Commission ("EEOC"), and, in several instances, to every federal employee in the Executive Branch. Plaintiff disagrees vehemently with those policies, and Plaintiff may well be entitled to do so. But disagreement with a government policy, without more, does not a Title VII claim make. To proceed past the pleading stage, Plaintiff must allege that Plaintiff was subjected to unwelcome conduct because of a protected status, and that the conduct was severe or pervasive enough to alter the objective conditions of Plaintiff's own employment. A generalized objection to how an agency implements executive policy fails to constitute a cognizable basis for relief, notwithstanding Plaintiff's disagreement with such policies.

Moreover, the policy-level allegations are generalized grievances that fail to confer standing on Plaintiff absent any particularized injury in fact, and as such, there is no jurisdiction over Plaintiff's claims, and thus there is no subject matter jurisdiction for the Court. Fed. R. Civ. P. 12(b)(1). Further, the handful of allegations that are actually personal to Plaintiff do not come close to "severe or pervasive" conduct motivated by Plaintiff's protected status. Plaintiff, having lost on the administrative record, now asks this Court to reach a different result on the same allegations – without adding a single new fact suggesting that any of the challenged policies were directed at Plaintiff individually, applied to Plaintiff differently than to any other employee, or caused Plaintiff a distinct injury. The result here should be the same as the administrative decision below – dismissal for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

Defendant respectfully requests that the Court grant this motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), or, in the alternative, strike the allegations as set forth in Section IV.A.2 below.

## II. Background

### A. Factual Background

Plaintiff identifies as a queer transgender man who was employed by the EEOC for over eight years between 2017 and 2025, and who ultimately and voluntarily resigned on June 18, 2025 as Director of Information Governance and Strategy, just four months after being promoted to a director-level position in February 2025. Compl. ⁋⁋ 1, 32.

On January 20, 2025, President Trump issued Executive Order 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Trust to the Federal Government* (the "Executive Order"), and appointed Defendant Andrea Lucas as Acting Chair of the EEOC, who was later confirmed as Chair on November 5, 2025. Per the Executive Order,

> "the policy of the United States [is] to recognize two sexes, male and female," and "[t]hese sexes are not changeable and are grounded in fundamental incontrovertible reality." Executive Order, Sec. 2. "Each agency and all Federal employees shall enforce laws governing sex-based rights, protections, opportunities, and accommodations to protect men and women as biologically distinct sexes." *Id*. at Sec. 3(b). "Agencies shall remove all statements, policies, regulations, forms, communications, or other internal and external messages that promote or otherwise inculcate gender ideology, and shall cease issuing such statements, policies, regulations, forms, communications or other messages. Agency forms that require an individual's sex shall list male or female, and shall not request gender identity." *Id*. at Sec. 3(e). Implementation and reporting wise, within 120 days of the Executive Order, "each agency head shall submit an update on implementation of [the Executive Order] to the President," *id.* at 7(a), and "[e]ach agency head shall promptly rescind all guidance documents inconsistent with the requirements of this [Executive Order]." *Id.* at 7(c).

Following the issuance of the Executive Order in January 2025, the EEOC reviewed the Order and took the necessary steps towards compliance with the Executive Order, consistent with its legal obligations. *Id.* ¶¶ 6–16, 39–46. In the less than six months before the June 18, 2025 resignation, Plaintiff alleges Plaintiff's employment "situation became unbearable" due to the implementation of the new policies. *Id.* ⁋⁋ 17, 19. Plaintiff initiated EEO counseling on March 4, 2025, with the Office of Civil Rights ("OCR"), contending that Plaintiff had been subjected to discrimination, harassment (non-sexual), and a hostile work environment, on the bases of sex (male-transgender) and sexual orientation (queer). *See* Final

Agency Decision ("FAD"),[1] attached hereto as Ex. A, at 1. The initial interview was conducted on April 22, 2025, and Plaintiff was issued a Notice of Right to File Formal Complaint on June 2, 2025. *Id.* Plaintiff subsequently filed a Formal Complaint of Discrimination on June 13, 2025. *Id.*

In support of Plaintiff's administrative claims before the EEOC, Plaintiff cited thirteen episodes or "events" of alleged misconduct by the EEOC, which the EEOC's FAD identifies by letters (a) through (m) and categorizes into two distinct groups – one, Generalized Grievances: Events (d), (f), (g), (h), (i), (j), and (k); and two, Merits Determinations: Events (a), (b), (c), (e), and (l).[2] *See* Ex. A, Final Agency Decision, dated March 27, 2026.

The EEOC ultimately dismissed the seven Generalized Grievances: Events (d), (f), (g), (h), (i), (j), and (k) because they are EEOC- wide policy actions that are beyond the scope of Plaintiff's employment, and lack the necessary nexus to any individualized harm suffered by Plaintiff. As alleged, the Generalized Grievances are:

- Defendant's January 28, 2025 press release, *Removing Gender Ideology and Restoring the EEOC's Role of Protecting Women in the Workplace* (Compl. ¶¶ 70–72; FAD (d));
- the alleged EEOC's removal of information for LGBTQ+ employees from the Agency's public website (*Id.* ¶ 73; FAD (f));
- the EEOC's alleged temporary pause of processing gender-identity charges and the EEOC's withdrawal from unrelated private sector litigation involving transgender individuals (*Id.* ¶¶ 64–69; FAD (g) and (k));

[1] Defendant requests that the Court take judicial notice of the Final Agency Decision from Plaintiff's administrative Equal Employment Opportunity ("EEO") proceedings, cited in the Complaint ⁋ 20. "[I]t is well established that courts may consider the, administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record." *Lacayo v. Donahoe*, No. 3:14-cv-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015). Moreover, courts may consider documents outside of the complaint on a motion to dismiss where the document is central to the plaintiff's claims and the defendant attaches it to the motion to dismiss. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[2] Plaintiff alleged another allegedly discriminatory event (FAD (m)) during Plaintiff's initial inquiry into the EEO process, as the intake form only allowed for "Male" or "Female" as options for gender identity. Ex. A at 5. As this was an impermissible "spin-off" complaint challenging the processing of a complaint, it was dismissed per regulation, and Plaintiff does not reallege it here in this suit. *Id.*, citing 29 C.F.R. § 1614.107(a)(8).

- Defendant's rescission of an internal policy, "Non-Discrimination and inclusion Policy Regarding Gender Identity and Sexual Orientation (Policy Number 560.008)" (*Id.* ¶ 74; FAD (h));
- Defendant's change in recordkeeping terminology from "gender identity" to "transgender status" (*Id.* ¶ 76, FAD (i)); and
- the EEOC's removal of the "Mx." honorific from Agency records (*Id.* ¶¶ 77–78; FAD (j)).

The EEOC found that Plaintiff experienced the above in the same way as every other EEOC employee, and failed to allege an individual or unique harm directed at Plaintiff as a result of the Agency's actions. That is, Plaintiff does not allege that any of these actions were taken because of who Plaintiff is, applied to Plaintiff and not to others, or singled Plaintiff out in any way. The EEOC determined they were classic "generalized grievances" and failed to state a Title VII claim because they did not allege adverse conduct directed at Plaintiff individually, nor because of any protected status. Ex. A at 3-5.

Of the remaining six Merits Determinations: Events (a), (b), (c), (e), and (l), while they may relate to conduct directed at Plaintiff individually, vis-à-vis any other EEOC employee, the EEOC examined each one of the claims and concluded that Plaintiff had not established the existence of a hostile work environment. Ex. A at 5-8. As alleged, the Merits Determinations Events are:

- a single work assignment Plaintiff was asked to help develop – a process that would allow for the rapid review and censorship of presentation materials (Compl. ¶¶ 49–54; FAD (a) and (b));
- the disabling of a voluntary, agency-wide pronoun-display application – EEOC's Self-Service User Profile App ("the App"), which Plaintiff helped develop in 2022 (*Id.* ¶¶ 55–59; FAD (c));
- the disbandment of all affinity groups which included but was not limited to EEOC Pride, a voluntary employee resource group where Plaintiff sat on the board, which the record confirms happened to every such group at the Agency, not to Plaintiff's group alone (*Id.* ¶¶ 60–63; FAD (e)); and
- a set of workplace friction episodes over several months, allegedly constituting retaliation and leading to Plaintiff's alleged constructive discharge – a meeting interruption, a comment that Plaintiff had "fallen out of favor," a temporary lapse in network permissions that was promptly restored, the alleged exclusion from one meeting, and an instruction to remove a podcast – but

none of which Plaintiff alleges was motivated because of Plaintiff's sex, sexual orientation, or transgender status, as opposed to ordinary workplace friction of the kind Title VII does not reach. (*Id.* ¶¶ 84–90; FAD (l).) Plaintiff also alleges that Agency leadership adopted policies and personnel decisions that Plaintiff viewed as hostile to transgender employees, and that coworkers made statements consistent with Plaintiff's perception that the workplace had become hostile. These allegations largely describe policy disagreements, subjective concerns, and discrete workplace inconveniences, without facts showing that the Agency materially altered the terms or conditions of Plaintiff's employment or subjected Plaintiff to conditions so objectively intolerable that a reasonable employee would have been compelled to resign.

Notably, none of the above events, nor the entire Complaint, allege either direct or circumstantial evidence of discrimination against Plaintiff's protected characteristic. The Complaint also does not identify a similarly situated comparator who was treated more favorably than Plaintiff with respect to any of the at-issue employment actions. As each of Plaintiff's three causes of action rests on the same deficient factual predicate, these allegations are insufficient to plead a hostile work environment, discrimination, or retaliation.

**B. Plaintiff's Administrative Proceedings & Civil Action**

On March 5, 2025, Plaintiff initiated the EEO counseling process; Plaintiff filed a formal administrative complaint on June 13, 2025 (amended June 18, 2025, to add a constructive discharge claim), which the Agency investigated and resolved by the FAD dated March 27, 2026. Ex. A at 2–3; Compl. ¶¶ 18–20, 27–29. As explained above, the FAD dismissed seven of the thirteen alleged events as generalized grievances or as an impermissible collateral challenge to the processing of Plaintiff's own complaint, and found, on the merits, that the remaining events did not establish a hostile work environment motivated by Plaintiff's protected status, or a constructive discharge. Ex. A at 3–9.

On April 23, 2026, Plaintiff filed this civil action, within thirty days of receiving the FAD. Compl. ¶ 29. Plaintiff's Complaint reproduces, essentially without material factual addition, the same categories of alleged misconduct considered by the Agency below, and organizes them into three causes of action under Title VII: (1) hostile work environment, (2) discrimination, and (3) retaliation, all predicated on the

same course of conduct and culminating in an alleged constructive discharge. Compl. ¶¶ 96–121. In doing so, Plaintiff prays for both declaratory judgment and compensatory damages. The events at issue in each claim are overlapping if not identical.

## III. Legal Standards

### A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

Article III limits federal jurisdiction to "cases" and "controversies," which requires a plaintiff to demonstrate an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A "generalized grievance" shared by a large class of citizens – including a grievance about how a government agency conducts its public affairs, litigation, or internal recordkeeping – does not confer standing on an individual plaintiff absent some "distinct and palpable injury" to that plaintiff. *Warth v. Seldin*, 422 U.S. 490, 499, 501 (1975). A plaintiff cannot pursue a generalized grievance that members of one protected group are afforded benefits not offered to other protected groups, unless the complainant further alleges some specific injury to himself as a result of the alleged discriminatory practice. *Id.* at 499.

Speculation about possible future application of a policy to the plaintiff likewise does not establish the "certainly impending" injury Article III requires. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also, Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016) (injury must be both concrete and particularized to the plaintiff). Where a complaint fails to allege facts establishing standing, the court must dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

### B. Rule 12(b)(6) – Failure to State a Claim

A Rule 12(b)(6) challenge disputes "the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), make clear that conclusory allegations are no longer sufficient to withstand a challenge under Rule 12(b)(6). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has "facial plausibility" only if the complaint pleads

facts sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must treat all factual allegations as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

In light of *Twombly* and *Iqbal*, the Ninth Circuit has articulated a two-part test that the plaintiff must pass to survive a motion to dismiss.

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV. Argument

### A. Plaintiff's Generalized Grievances Relating to the Executive Order, and the Agency's Implementation thereof, Does Not Present a Case or Controversy to Confer Standing Under Title VII

Viewed as a whole, Plaintiff's allegations arise principally from Plaintiff's disagreement with the Agency's implementation of the Executive Order and the resulting Agency-wide policy decisions, not from any individual injury in fact suffered by Plaintiff. The Complaint does not principally target the coworkers and supervisors with whom Plaintiff worked for more than eight years — individuals who elevated Plaintiff to a director-level role in February 2025 amid said policy changes. Rather, the Complaint expresses grievance with the new Executive and administrative priorities.

The remaining allegations concern isolated workplace interactions and routine management decisions that Plaintiff characterizes as discriminatory or retaliatory. The Court's inquiry should be limited to whether Plaintiff plausibly alleges actionable employment discrimination directed toward Plaintiff personally, not whether Plaintiff disagrees with policy decisions made by the Executive Branch.

#### 1. Plaintiff's Allegations Are Unactionable Generalized Grievances that Deprive the Court of Jurisdiction.

Although the Complaint asserts claims under Title VII, a substantial portion of its allegations challenge matters that extend beyond the scope of an employment discrimination action. Rather than

focusing exclusively on Plaintiff's own employment, the Complaint devotes significant attention to Executive Order 14168, the Chair's public statements, alleged revisions to Agency guidance and education/training materials, rescission of internal policies, removal of public-facing resources, suspension of enforcement priorities, and withdrawal from litigation involving third parties. Plaintiff repeatedly characterizes these governmental actions as unlawful and inconsistent with Title VII and Supreme Court precedent and alleges that their implementation caused Plaintiff emotional distress.

To the extent Plaintiff seeks to challenge the legality, constitutionality, or implementation of Executive Order 14168 or the Commission's policy decisions implementing that Order, those allegations do not state a cognizable claim under Title VII. Title VII provides a cause of action for employees who, on account of national origin, race, sex, religion, or color, are subjected to discrimination, retaliation, or a hostile work environment with respect to the terms, conditions, or privileges of their employment. It does not authorize judicial review of Executive Branch policy decisions, enforcement priorities, or agency leadership's interpretation of federal law simply because an employee disagrees with those decisions or alleges emotional distress resulting from policies of general applicability.

Seven of the thirteen episodes in the Complaint (FAD (d), (f), (g), (h), (i), (j), (k)) share a common defect: Plaintiff alleges that the Agency adopted a policy, took a public position, or made a decision that applied to all employees, to the public, or to litigants in unrelated cases – and Plaintiff alleges upset, worry, or offense from it, without alleging that the policy was applied to Plaintiff differently than to anyone else or caused Plaintiff any injury distinct from the injury (if any) suffered by the LGBTQ+ community or the public generally. That is the definition of a generalized grievance, and it is not a basis for standing. *Warth*, 422 U.S. at 499.

The January 28, 2025 press release (Compl. ¶¶ 70–72) is a public statement of Agency enforcement priorities; Plaintiff does not allege it was directed at Plaintiff or that anyone at the Agency treated Plaintiff differently because of it – Plaintiff alleges only that it caused Plaintiff "immediate emotional distress" because of what it signaled about the Agency's views. *Id.* ¶ 72. Plaintiff's subjective reaction to a uniformly applicable policy announcement does not convert that disagreement to cognizable injury. The

alleged temporary hold on processing gender-identity charges and the Agency's decision to withdraw from six unrelated pieces of litigation (*Id.* ¶¶ 64–69) concern how the Agency processes other people's charges and litigates other parties' cases – Plaintiff was not a charging party in any of those matters, and Plaintiff's own charge was in fact accepted, investigated, and decided. The rescission of the internal non-discrimination policy (*Id.* ¶ 74) is, on Plaintiff's own allegation, legally inert: Plaintiff pleads that "federal law still mandates these protections" regardless of the policy's rescission, and that the rescission merely "signaled" something to LGBTQ+ employees as a class. *Id.* The terminology change from "gender identity" to "transgender status" in Agency recordkeeping (*Id.* ¶ 76) and the removal of the "Mx." honorific (*Id.* ¶¶ 77–78) are changes to Agency-wide forms and records, not actions singling out Plaintiff.

Nor can Plaintiff cure this defect by aggregating these generalized policy objections and labeling them discrimination, harassment, retaliation, or components of a constructive-discharge theory. Title VII protects an employee from unlawful treatment of that employee; it does not provide a vehicle for an employee to obtain judicial review of every Agency policy the employee believes is inconsistent with Title VII or hostile to a protected group. *See FreeState Justice v. Equal Employment Opportunity Commission, et al.*, 2026 WL 1703707 (D. Md. June 12, 2026) ( EEOC's decision to alter its investigations of gender identity discrimination claims constitutes a discretionary decision over which the Court lacks authority to review), citing *Cross v. U.S. Equal Emp. Opportunity Comm'n,* 810 F. Supp. 3d 88, 95-98 (D.D.C. 2025) (plaintiff lacked standing to assert challenge against EEOC's new policy to stop investigating disparate-impact claims because such decision was within agency's discretion). Absent facts plausibly alleging that these Agency-wide actions were applied to Plaintiff, altered Plaintiff's employment, denied Plaintiff a benefit, subjected Plaintiff to differential treatment, or otherwise caused Plaintiff a cognizable individualized injury, they cannot supply the factual predicate for Plaintiff's Title VII claims.

This is precisely the pattern of allegation that courts routinely dismiss for lack of standing or failure to state a claim. A plaintiff cannot pursue "a generalized grievance ... shared in substantially equal measure by all or a large class of citizens," *Warth*, 422 U.S. at 499, and "allegations of possible future injury" – such as Plaintiff's speculation that the charge-processing hold "has direct implications for my own complaint" (an unfounded fear that the processing of Plaintiff's own complaint has since disproved) – do not satisfy Article III. *Clapper*, 568 U.S. at 409. The Agency's FAD reached this same conclusion as to each of these seven events after a full investigatory record, and Plaintiff has added no new facts in this Complaint to cure the defect. Ex. A at 3–5.

**2. The Appropriate Alternative Remedy is the Striking of These Generalized Grievance Allegations from the Complaint (Fed. R. Civ. P. 12(f))**

A close reading of the Complaint reveals that the majority of the factual allegations offered in support of Plaintiff's hostile work environment cause of action do nothing to show Plaintiff's own particularized injury in fact, other than claims of emotional distress from seeing the Executive Order being implemented at the EEOC. With no injury in fact and just generalized grievances, Plaintiff has no standing before the Court, and there is neither personal jurisdiction over Plaintiff nor subject matter jurisdiction of the Court.

Should Plaintiff's Complaint survive Rule 12(b)(1) and Rule 12(b)(6), *infra*, the generalized grievances allegations should be stricken from the Complaint pursuant to Rule 12(f). Specifically, the Court should order stricken those claims and allegations the EEOC already found to be "generalized grievances." (FAD (d), (f), (g), (h), (i), (j), (k).) These include the following in the Complaint:

"E. Andrea Lucas Publicly Declares Harassment and Discrimination Against Transgender People Does Not Violate Title VII" – Compl. ⁋⁋ 12, 70-72 (FAD (d).)

"F. The EEOC Removes Information For LGBTQ+ Employees From its Website and Rescinds its Internal Antidiscrimination Policy" – *Id.* ⁋⁋ 13, 15, 73-75 (FAD (f), (h).)

"D. The EEOC's Refusal to Process Charges Alleging Gender Identity Discrimination and Withdrawal From Litigation Involving Transgender Rights" – *Id.* ⁋⁋ 14, 16, 64-69 (FAD (g), (k).)

"G. The EEOC Stops Collecting Information About Gender Identity and Removes the 'Mx.' Salutation Option" – *Id.* ⁋⁋ 76-78 (FAD (i), (j).)

**B. Count I Fails to State a Claim for Hostile Work Environment**

Even setting aside Plaintiff's generalized grievances, a hostile work environment claim requires an employee to prove "(1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Kortan*, 217 F.3d at 1109-10 (citing *Pavon v. Swift Trans. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999)). The essence of a harassment claim is a workplace that is "permeated with 'discriminatory intimidation, ridicule, and insult.'" *Morgan*, 536 U.S. at 116. It is intended to protect employees from "a discriminatory hostile or abusive environment." *Harris*, 510 U.S. at 21. Here, Plaintiff fails to plead a hostile work environment for multiple independent reasons.

**1. Plaintiff Does Not Plausibly Allege Any Actionable Harassment**

Plaintiff's hostile work environment claim fails at the first prima facie element because Plaintiff does not allege being subjected to any "verbal or physical conduct of a harassing nature." *See Bleeker v. Johanns*, No. 07-cv-0413-PCT, 2009 WL 4730931, at *4 (D. Ariz. Dec. 2, 2009), *aff'd sub nom. Bleeker v. Vilsack*, 468 F. App'x 731 (9th Cir. 2012); *see also Silveria v. McDonough*, No. 20-17457, 2022 WL 187839, at *1 (9th Cir. Jan. 20, 2022) (affirming dismissal of hostile work environment claim and stating the first prima facie element "typically involves physical touching or repeated comments and gestures based on a protected characteristic") (quotation marks and citation omitted). In order to plead a hostile work environment, a plaintiff must allege being subjected to "ridicule, insulting comments, intimidation, physical contacts, or threats." *Fowler v. Potter*, No. 06-cv-04716-SBA, 2008 WL 2383073, at *10 (N.D. Cal. June 9, 2008) (analogizing to Title VII law for a hostile work environment claim asserted under the Rehabilitation Act).

This Complaint contains no such allegations. The factual allegations underlying Plaintiff's hostile work environment claim instead describe actions undertaken by Defendant and EEOC officials in the ordinary course of their supervisory duties, essentially asking Plaintiff to perform Plaintiff's job duties like: helping build a document-review tool (Compl. ¶¶ 49–54); retiring an optional, agency-wide pronoun-display application (*Id.* ¶¶ 55–59); and disbanding all affinity groups including Pride, which the Plaintiff's own Complaint and the FAD confirm happened to every voluntary employee organization at the Agency, not to EEOC Pride alone (*Id.* ¶¶ 60–63; Ex. A at 6).

These allegations establish that Plaintiff experienced "employment decisions with which Plaintiff disagreed, not physical or verbal conduct of a harassing nature." *Keller-McIntyre v. San Francisco State Univ.*, No. 06-cv-3209-MMC, 2007 WL 776126, at *13 (N.D. Cal. Mar. 12 2007); *see also Bleeker*, 2009 WL 4730931, at *4; *Cooper v. Dignity Health*, 438 F. Supp. 3d 1002, 1016-17 (D. Ariz. 2020). There is no allegation that any EEOC supervisor or employee "ever made any derogatory comments relating to plaintiff's" identifying as transgender or queer. *Keller-McIntyre*, 2007 WL 776126, at *13; *Pesci v. McDonald*, No. 15-cv-00607-SVW, 2015 WL 12672094, at *10 (C.D. Cal. Oct. 22, 2015). Even if some of these communications involved verbal or physical contact with Plaintiff, there is no allegation that any such interaction included any "discriminatory intimidation, ridicule, and insult," and thus they cannot be considered to be "of a harassing nature." *Bleeker*, 2009 WL 4730931, at *4.

Rather than a hostile work environment, the employment decisions identified by Plaintiff are "the usual set of activities which occur between supervisors and employees." *Pesci*, 2015 WL 12672094, at *10; *see also Luat v. Mabus*, No. 11-cv-0496-GPC, 2013 WL 12091018, at *8 (S.D. Cal. July 31, 2013); *Dixon v. Hawaii, Dep't of Educ.*, No. 16-cv-110, 2017 WL 6029589, at *11 (D. Haw. Dec. 5, 2017) (allegations based on "'work-related actions by supervisors' acting within the scope of their official duties" do not plausibly demonstrate an abusive work environment).

Plaintiff's hostile work environment claim thus fails because Plaintiff does not allege anything that could possibly establish the first element of a prima facie claim (*i.e.*, verbal or physical conduct of a harassing nature).

**2. Plaintiff Does Not Allege Conduct That Is Sufficiently Severe or Pervasive to Alter the Conditions of Plaintiff's Employment.**

A hostile work environment requires conduct "sufficiently severe or pervasive to alter the conditions of the victim's employment," judged by the totality of the circumstances, including frequency, severity, whether the conduct was physically threatening or humiliating, and whether it unreasonably interfered with work performance. *Harris*, 510 U.S. at 21, 23. "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (quotation marks omitted). The Ninth Circuit has repeatedly held that conduct considerably sharper than what Plaintiff alleges here does not clear that bar. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 798–99 (9th Cir. 2003) (coworkers mocking plaintiff's accent and mimicking a racial stereotype on a couple of occasions fell into the "simple teasing" category and was not actionable); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110–11 (9th Cir. 2000) (supervisor's repeated derogatory remarks about women, including directed at plaintiff by name, did not establish a hostile work environment); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642–44 (9th Cir. 2003) (two isolated incidents, including a supervisor's ethnically-charged remark, insufficiently severe or pervasive).

Measured against that standard, Plaintiff's individualized allegations fall well short. Being asked to assist with organizing document review – concededly within Plaintiff's job duties as the Agency's information-governance director – is a work assignment, not harassment; Plaintiff does not allege that the assignment was given to Plaintiff because Plaintiff identifies as transgender, only that Plaintiff personally objected to its substance. Compl. ¶¶ 51–54; Ex. A at 5. The retirement of the pronoun-display application affected all employees who used it, regardless of protected status, and Plaintiff does not allege the Agency prohibited employees from stating pronouns by other means, such as email signature blocks. Compl. ⁋⁋ 55-59; Ex. A at 5–6. The disbandment of EEOC Pride occurred alongside the disbandment of every other voluntary employee organization at the Agency – a fact the FAD confirms and Plaintiff's own Complaint

does not dispute – which forecloses any inference that EEOC Pride, and by extension Plaintiff, was singled out because of sexual orientation or gender identity. Compl. ¶¶ 60-63; Ex. A at 6.

The remaining workplace-friction episodes – most notably, a colleague's remark that Plaintiff had "fallen out of favor" with a different office that Plaintiff did not report to (*Id.* ¶ 81); a lapse in network permissions that was restored after Plaintiff raised the issue (*Id.* ¶ 85); the alleged exclusion from a single vendor meeting arranged by a colleague (*Id.* ¶ 87); and an unexplained instruction to remove a podcast episode from the intranet (*Id.* ¶ 89) – are, at most, the kind of "ordinary tribulations of the workplace" that Title VII does not redress, particularly because Plaintiff does not allege facts connecting any of them to Plaintiff's protected status beyond Plaintiff's own suspicion. *See Faragher*, 524 U.S. at 788. Sporadic, unexplained friction of this kind, spread across several months and several different EEOC offices and supervisors, is not the kind of frequent or severe conduct required to plead an objectively hostile environment. *Harris*, 510 U.S. at 21, 23.

### 3. Plaintiff Does Not Allege Facts Showing That the At-Issue Acts Were *Based On* Plaintiff's Protected Characteristic or Prior Protected Activity

Even if these allegations could clear the standing threshold, they independently fail to state a claim under Title VII, which reaches discrimination "based on" an individual's protected characteristic as applied to that individual's own "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1); see also 42 U.S.C. § 2000e-16(a) (federal-sector provision). The Ninth Circuit requires a plaintiff to allege facts plausibly suggesting that Plaintiff was subjected to hostile verbal or physical conduct "because of" Plaintiff's claimed protected characteristic. *Manatt*, 339 F.3d at 798; *see also Ching Fang Chang v. Dep't of Homeland Sec.*, No. 20-cv-07011-LHK, 2021 WL 2986516, at *2 (N.D. Cal. July 15, 2021) (dismissing Title VII hostile work environment claim where the complaint failed to allege that the alleged bullying or discrimination "was due to [the plaintiff's] 'race, color, religion, sex, or national origin.'"). "Title VII is not a general civility code, but forbids harassment only . . . that arises on account of a protected classification." *Santiago*, 2020 WL 6118528, at *5 (dismissing Title VII hostile work environment claim).

A hostile work environment claim requires that Plaintiff to plead personally being "subjected to" unwelcome, protected-class-based conduct that was severe or pervasive "from both an objective and a subjective standpoint." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). An across-the-board policy change that treats every employee identically – whatever one thinks of its wisdom – is not "conduct" directed at any individual employee "because of" that employee's protected trait; it is a facially neutral personnel or communications decision that happens to disappoint employees who hold a particular viewpoint about it. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (Title VII does not operate as a "general civility code" and requires proof that the conduct at issue actually constituted discrimination "because of ... sex").

Here, the Complaint does not provide any facts to suggest the at-issue conduct was "based on" Plaintiff's protected characteristic. To the contrary, Plaintiff identifies a list of discrete employment actions but asserts no facts suggesting that these acts were undertaken with discriminatory or retaliatory animus. As discussed *supra,* Part IV.B.1, the Complaint does not include any direct evidence of discrimination, such as derogatory comments about Plaintiff's transgender status. The Complaint also does not identify any similarly situated employees treated more favorably than Plaintiff or supply other circumstantial evidence that gives rise to an inference of harassment on the basis of Plaintiff's protected characteristic. As such, Plaintiff's allegations are too conclusory to support a reasonable inference that these were acts of harassment based on Plaintiff's transgender status, and Plaintiff's hostile work environment claim therefore should be dismissed. *See Ching Fang Chang*, 2021 WL 2986516, at *2.

Nor can Plaintiff bootstrap these Agency-wide policy episodes into a personal claim merely by alleging that Plaintiff, a transgender identifying employee, found them more upsetting than a cisgender employee might. Indeed, there is a difference between EEOC management carrying out the directives of the Executive Order (and Plaintiff feeling marginalized due to policy disagreement), and EEOC management marginalizing Plaintiff *because* of a protected status. A plaintiff's subjective distress at a policy personally opposed on political or ideological grounds – without an allegation that the policy was applied differently to Plaintiff – does not transform a policy dispute into workplace harassment. The FAD's

dismissal of these same seven events on this precise ground, following a full agency investigation, confirms what is apparent on the face of the Complaint. Ex. A at 3–5.

Indeed, this Circuit has recently rejected a materially similar attempt to predicate standing on the alleged unlawfulness of generally applicable government action. *Behringer v. Cal. Polytechnic State Univ. San Luis Obispo,* No. 23-4162, 2025 WL 2028297, at *1 (9th Cir. July 21, 2025) ("To the extent [Plaintiff] maintains the defendants violated federal or state law by enacting COVID health orders, he lacks standing to sue. [Plaintiff] was no more particularly harmed by these allegedly ultra vires actions than other county residents or students, and a "generalized grievance" does not confer Article III standing.) *See also Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575 (1992).

### C. Count II Fails to State a Claim for Discrimination

To establish a prima facie case of discrimination under Title VII, a plaintiff must show "(1) that he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *Mendenhall v. City & County of San Francisco*, No. 11-cv-4029-EMC, 2011 WL 6779300, at *4 (N.D. Cal. Dec. 27, 2011).

While the prima facie elements need not be formally pleaded, a complaint must "allege 'enough facts to state a claim to relief that is plausible on its face,'" *Mendenhall*, 2011 WL 6779300 at *4, and the prima facie elements are relevant to determining whether the plaintiff has alleged sufficient facts to state a plausible claim of discrimination. *Ahmed v. Wormuth*, No. 22-cv-04365-TSH, 2023 WL 4205765, at *9 (N.D. Cal. June 26, 2023) ("When a plaintiff does not plead a prima facie case, courts still look to the elements of the prima facie case to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.") (citation and quotation marks omitted); *Sablan v. A.B. Won Pat Int'l Airport Auth.*, No. 10-cv-00013, 2010 WL 5148202, at *4 (D. Guam Dec. 9, 2010) (in light of *Twombly* and *Iqbal*, courts "*must* look at a complaint in light of the relevant evidentiary standard, in order to decide whether it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"

(emphasis in original)). "[B]are recitations of elements without any factual basis" are not sufficient to state a claim for employment discrimination. *Willis v. Donahoe*, No. 13-cv-01562-YGR, 2013 WL 6199176, at *2 (N.D. Cal. Nov. 26, 2013).

Plaintiff's Count II discrimination claim realleges the same conduct addressed above and adds only the conclusory assertion that Defendant "altered the terms and conditions of Mr. Seawright's employment by excluding him from meetings, reducing his responsibilities, and minimizing the scope and influence of his role." Compl. ¶ 108. That is precisely the kind of "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," that *Iqbal* holds insufficient. 556 U.S. at 678. Stripped of its conclusions, the Complaint's specific factual content – a single excluded meeting, an unexplained podcast-removal instruction, a temporary and quickly-restored access lapse – does not plausibly allege a material change to the objective terms of Plaintiff's employment, let alone one connected to Plaintiff's protected status rather than to the ordinary vicissitudes of a reorganizing office. Nor does Plaintiff allege that similarly situated cisgender or non-LGBTQ+ colleagues were treated more favorably under comparable circumstances; Plaintiff's assertion that Defendant "treated cisgender employees more favorably" (Compl. ¶ 109) is unsupported by any factual comparator and is exactly the kind of conclusory allegation *Twombly* and *Iqbal* require courts to disregard.

### 1. The Complaint Does Not Allege Direct or Circumstantial Evidence to Support a Plausible Inference of Discrimination

Plaintiff's Complaint fails to allege facts to support a plausible inference that Plaintiff received differential treatment because of Plaintiff's protected characteristic. *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019) ("What is missing for each theory of liability are sufficient, nonconclusory allegations plausibly linking the disciplinary action to discrimination on the basis of sex."). A disparate treatment claim requires a plaintiff to "allege either direct evidence of discrimination, such as derogatory comments about his gender or race, or circumstantial evidence, 'which may include allegations that similarly situated individuals outside [his] protected class were treated more favorably or that other circumstances surrounding the at issue employment action give rise to an inference of discrimination.'"

*Austin v. City of Oakland*, No. 17-cv-03284-YGR, 2018 WL 2427679, at *4 (N.D. Cal. May 30, 2018) (citing *McCarthy v. Brennan*, No. 15-cv-03308-JSC, 2016 WL 946099, at *4 (N.D. Cal. Mar. 14, 2016) (alteration in original).

As an initial matter, the Complaint does not include any direct evidence of discrimination, such as derogatory comments about Plaintiff identifying as transgender or queer. *Austin*, 2018 WL 2427679, at *4 (a plaintiff may establish a plausible discrimination claim by alleging "direct evidence of discrimination, such as derogatory comments about his gender or race"); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) (finding the plaintiff offered "no evidence of discriminatory remarks made by" the decisionmaker to support a prima facie discrimination claim).

Nor does the Complaint allege circumstantial evidence to support an inference of discrimination. *See, e.g.*, *Heyer v. Governing Bd. of the Mt. Diablo Unified Sch. Dist.*, 521 F. App'x 599, 601 (9th Cir. 2013) (affirming dismissal of a race discrimination claim when, "[a]part from conclusory statements," the plaintiff made no factual assertion in the complaint "that he was replaced by a person of another race or that a person of another race was otherwise treated differently than he was"); *Knox v. Donahoe*, No. 11-cv-2596-EMC, 2012 WL 949030, at *7 (N.D. Cal. Mar. 20, 2012) ("conclusory claim for discrimination is not plausible and therefore not viable" where plaintiff did not claim that people outside of his protected class were treated more favorably); *Austin*, 2018 WL 2427679, at *4 (granting motion to dismiss where plaintiff cited "several contentious incidents involving his coworkers and supervisors" and offered only "conclusory assertions" that these incidents constituted discrimination); *McCarthy*, 2016 WL 946099, at *6-7; *Ardalan v. McHugh*, No. 13-cv-01138-BLF, 2014 WL 3846062, at *8 (N.D. Cal. Aug. 4, 2014) (a plaintiff must allege facts establishing that comparators are "similarly situated to her in all material respects"); *Van Petten v. McDonough*, No. 21-cv-01956-MCS, 2022 U.S. Dist. LEXIS 129171, at *6 (C.D. Cal. July 20, 2022) (dismissing ADEA claim where the plaintiff "identifies no similarly situated comparator to meet his burden to plead a discrimination claim").

Here, the Complaint does not allege that *anyone* was treated more favorably than Plaintiff with respect to the employment actions at issue, nor does Plaintiff allege factual information about (the unalleged) comparators to permit a plausible inference that those individuals were similarly situated to Plaintiff in all material respects.

In short, Plaintiff does not allege *any* direct or circumstantial evidence that could allow the Court to plausibly infer that the employment actions at issue were the result of discrimination against Plaintiff identifying as transgender or queer. Instead, the Complaint alleges Plaintiff's asserted protected characteristic, attacks the Executive Order and its mandated implementation at the Agency, and then asks the Court to infer that the EEOC discriminated against Plaintiff's protected characteristic without alleging *facts* to support a discriminatory link between the protected characteristic and the employment actions. *Heyer*, 521 F. App'x at 601; *Austin*, 2018 WL 2427679, at *4. Federal pleading requirements demand more than the conclusory, unadorned recitation of the elements that Plaintiff presents here. *Starr*, 652 F.3d at 1216; *Willis*, 2013 WL 6199176, at *2.

The Complaint here simply does not include factual allegations of direct or circumstantial discrimination to establish a plausible link between the conduct complained of and each of Plaintiff's protected characteristics. *Austin*, 925 F.3d at 1138. Accordingly, Plaintiff's conclusory discrimination claim (Count II) should be dismissed.

### D. Count III Fails to State a Claim for Retaliation

To state a claim for retaliation, a plaintiff must allege that: (1) plaintiff engaged in a protected activity; (2) plaintiff was subsequently subjected to an adverse employment action; and (3) a causal link exists between the two. *Manatt v. Bank of America*, 339 F.3d 792, 800 (9th Cir. 2003). To survive a motion to dismiss, a plaintiff "must plead factual allegations that, taken as true, plausibly suggest" the retaliation was "'causally connect[ed] to [the plaintiff's] protected activity.'" *Ryan v. Santa Clara Valley Transp. Auth.*, No. 16-cv-04032-LHK, 2017 WL 1175596, at *16 (N.D. Cal. Mar. 30, 2017) (quoting *Lelaind v. City and Cty. of San Francisco*, 576 F. Supp. 2d 1079, 1094 (N.D. Cal. 2008)). A plaintiff "may allege direct or circumstantial evidence from which causation can be inferred, such as an employer's 'pattern of antagonism following the protected conduct[.]'" *Ahmed v. Wormuth*, No. 22-cv-04365-TSH, 2023 WL 2309776, at *7 (N.D. Cal. Feb. 28, 2023) (quoting *Porter v. California Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005)). Plaintiff's retaliation claim fails for similar reasons Plaintiff's hostile work environment and discrimination claims fail.

To plead retaliation, Plaintiff must allege a materially adverse action – one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" – caused by

Plaintiff's alleged protected activity. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000). Count III alleges the identical conduct as Count II – exclusion from meetings, reduced responsibilities, diminished role – now recast as retaliatory rather than discriminatory. Compl. ¶¶ 118–119. But timing and causation cannot be inferred from conclusions alone. Plaintiff's own timeline shows that most of the challenged Agency-wide policy conduct (i.e., the "generalized grievances") predate Plaintiff's March 2025 internal report and complaint by weeks (compare *Id.* ¶¶ 49–78 (January–February 2025) with *Id.* ¶¶ 79–82 (March 2025 complaints)), and therefore cannot plausibly have been caused by that protected activity. The remaining individualized incidents that post-date Plaintiff's complaints must independently satisfy *Burlington Northern* and be plausibly connected to Plaintiff's protected activity; they do not become retaliatory merely because they occurred after Plaintiff complained. At minimum, the Agency-wide actions predating Plaintiff's protected activity cannot support Count III, and any retaliation claim must be confined to post-complaint actions plausibly alleged to have been taken against Plaintiff because of Plaintiff's protected activity. A retaliation claim built entirely on the same insufficiently pleaded and largely non-actionable conduct underlying Counts I and II does not independently survive dismissal.

Here, the Complaint does not plead facts leading to the plausible conclusion that the at-issue employment actions were "causally connect[ed] to [the plaintiff's] protected activity," *Ryan*, 2017 WL 1175596, at *16, and/or that the at-issue employment actions were adverse as a matter of law. Plaintiff's retaliation claim (Count III) thus should be dismissed.

### E. Because Plaintiff Has Not Pleaded an Underlying Discriminatory or Hostile Work Environment, Plaintiff's Constructive Discharge Allegations Fail as a Matter of Law

Constructive discharge is not a freestanding claim; it requires proof of an underlying Title VII violation – ordinarily, a hostile work environment – so intolerable that a reasonable employee would have felt compelled to resign, and it therefore "necessarily includes a showing that the abusive working environment became so intolerable that [the employee's] resignation qualified as a fitting response." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quotation marks omitted); *Pennsylvania State Police v. Suders*,

542 U.S. 129, 146–47 (2004) (constructive discharge is a “worse case” harassment claim, requiring proof of the predicate hostile environment plus aggravating conduct compelling resignation). “The law does not permit an employee's subjective perceptions to govern a claim of constructive discharge”; the standard is objective. *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000).

For the reasons set forth in Sections IV.A–D above, Plaintiff has not plausibly alleged an underlying hostile work environment or discrimination directed at Plaintiff because of Plaintiff’s protected status; ergo, Plaintiff’s constructive discharge allegations necessarily fail, as well – precisely the conclusion the Agency’s own FAD reached on this identical record. Ex. A at 9 (“a finding of constructive discharge is precluded by our determination that Complainant was not subjected to a discriminatory hostile work environment”). Plaintiff's own resignation letter, incorporated into the Complaint as Exhibit A, confirms that Plaintiff’s decision to resign was motivated primarily by policy disagreement – Plaintiff’s stated unwillingness to “allow [Plaintiff’s] expertise to be used as a tool of this administration to implement anti-LGBTQ+ policies” – rather than by objectively intolerable individualized treatment. Compl., Ex. A. However genuine and deeply felt that policy disagreement may be, it describes a values-based resignation, not the kind of objectively intolerable, individually-targeted hostile environment Title VII's constructive discharge doctrine requires.

## V. Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant’s motion to dismiss as to all three claims or, alternatively, that the Court strike Plaintiff’s general grievance allegations in the Complaint consistent with Section IV.A.2 above.

Dated: August 13, 2026

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Kenneth J. Kao*
KENNETH J. KAO
Assistant United States Attorney
Attorneys for Defendant